MARTIN v. DANIEL et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 14, 1914.)

1. FRAUD (§ 12*) — ACTIONS — RIGHT OF ACTION.

A false statement upon which an action of fraud may be predicated must relate to existing or pre-existing facts, and mere promises as to future acts will not support it, and hence an action for damages for fraud based on a breach of a promise to obtain funds, and conduct the business of a corporation, cannot be maintained; the promise relating to acts in the future.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 14; Dec. Dig. § 12.*]

2. CANCELLATION OF INSTRUMENTS (§ 46*)— ACTIONS—EVIDENCE.

In a suit by stockholders of a corporation to cancel a note given by them to defendant to secure an indebtedness of the corporation to defendant, on the ground that defendant breached an agreement, entered into when the note was delivered, to remain with the corporation and conduct its business, evidence of the breach of such agreement is admissible to establish a failure of consideration for the note.

[Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 46.*]

3. TRIAL (§ 169*)—PEREMPTORY INSTRUCTION FOR DEFENDANT.

In an action for deceit, and to cancel a note given by plaintiffs to defendant to secure a debt of a corporation to defendant, in consideration of an agreement by defendant to give his personal attention to the affairs of the company, and, among other things, to make its financial standing as good on a specified date as it was on a prior date, a peremptory instruction to find for defendant "as to all matters set up in plaintiffs' petition" was improper, though the practically uncontradicted evidence showed that defendant did comply with the stipulation as to financial standing at the date mentioned.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 341, 381–387, 389; Dec. Dig. § 169.*]

4. EVIDENCE (§ 441*) — CONTRADICTION OF NOTE BY PAROL EVIDENCE.

Where plaintiffs, stockholders of a corporation, executed a note to defendant to secure a debt of the corporation, evidence of a contemporaneous parol agreement by defendant not to negotiate the note, but to carry and extend it until certain other debts of the corporation were discharged, was inadmissible to vary the expressed terms of the note.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

5. EVIDENCE (§ 142*)—ADMISSIBILITY—MATERIALITY.

Where defendant, in settlement of a suit by plaintiffs to rescind a purchase of corporate stock, agreed to handle the corporation's business in such a manner as to make its financial standing as good as it was on the date of the sale of the stock, evidence of an appraisal of the property of the corporation made a year or more after the sale is inadmissible to show the value of the stock at the time of the purchase.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. § 142.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by J. W. Daniel and others against G. C. Martin. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Jones & Jones, of Mineola, for appellant.

TALBOT, J. This suit was instituted by the appellees against appellant, and by their amended petition, upon which the case was tried, they alleged, in substance: That on the 18th day of March, 1911, the appellees purchased from the appellant and one M. T. Skinner 106 shares of the capital stock of the Hardwick Abbott Manufacturing Company, a corporation organized under the laws of Texas. That said shares were of the par value of $100 per share, and the appellees purchased said shares for the sum of $160 per share. That thereafter a suit was filed in the district court of Nolan county, Tex., to rescind said contract of sale, and that after the filing of said suit the appellant and appellees entered into a written contract, by the terms of which the appellees were to dismiss the suit filed in Nolan county, and, as a part of the consideration for the dismissal of said suit in Nolan county, the appellant did covenant and agree as follows: "And, further, the said G. C. Martin does hereby bind and obligate himself, and guarantee that all suits filed against the said company shall be dismissed, and, further, that the said G. C. Martin will procure sufficient funds to carry on the business of said company, but in this connection all parties hereto shall indorse the company's paper to pro-

cure said funds, and, further, the said G. C. Martin does hereby agree to carry the amount due him by said company in open account." And the said G. C. Martin did further agree: "That he will make any and all deficiency or shortage good; that he will individually pay off all excess and liability, and in every way make the financial standing of the company as good at this time as it was on March 18, 1911." They further alleged: That on August 2, 1911, the date of said contract, the Hardwick Abbott Manufacturing Company was indebted to said Martin in the sum of about $3,000, and the defendant agreed to carry same in an open account. That afterwards, on the 3d day of August, 1911, the said G. C. Martin contracted and agreed with the plaintiffs that he would stay with the Hardwick Abbott Manufacturing Company at Dallas, Tex., and give said company and its affairs his personal attention, until all of the past-due indebtedness of said company should be paid or adjusted to the satisfaction of the appellees, and that he would not make any demand on the company until all of its other obligations then existing had been paid. That in consideration of said agreement the appellees J. W. Daniel and T. J. Dudley did execute, for and on behalf of the Hardwick Abbott Manufacturing Company, and for themselves did personally sign as surety, a certain promissory note dated August 3, 1911, payable to G. C. Martin, at Dallas, Tex., December 1, 1911, with interest from date at the rate of 10 per cent. That the said Martin did further agree that he would not sell, transfer, or negotiate said note in any way, and that after maturity thereof he would extend the date of payment of said note in the event the other debts of the said company should not be paid on or before maturity of said note. That such representations were fraudulent, and plaintiffs were thereby induced to execute said note, which was given in settlement in whole or in part of said company's indebtedness to defendant. They further alleged: That they (appellees) had fulfilled their agreements in all respects; but that G. C. Martin had failed to perform his contract in the following respects: That he had not procured sufficient funds to carry on the business of the Hardwick Abbott Manufacturing Company, and he had not made any effort to do so. That he had not made the financial standing of said company as good as it was on the 18th day of March, 1911. That he had not stayed with the business and given it his personal attention. That said company has not been able to pay off and discharge the greater portion of its debts and claims existing against it at the time the above agreement was made. That the said G. C. Martin did, on the 26th day of August, 1911, collect from the city of Dallas the sum of $618.50, due the Hardwick Abbott Manufacturing Company, and

did convert the same to his own use, and he has not given the business of the Hardwick Abbott Manufacturing Company any attention or assistance whatever. That by reason thereof the said company, and thereby the plaintiffs J. W. Daniel and T. J. Dudley, holders of the greater portion of the stock, have been greatly damaged in the sum of $2,618.50. They further alleged that said Martin, contrary to his agreement, had been and is now endeavoring to transfer and negotiate the note which appellees and the Hardwick Abbott Manufacturing Company had executed to him, that said Martin had no property subject to execution, and that they had no adequate remedy at law. They prayed for damages in the sum of $16,960, and that the injunction which had been issued in the case be made perpetual, and for general and special relief. On March 3, 1913, they filed a trial amendment, in which they alleged that G. C. Martin was possessed of all the facts as to the condition of the Hardwick Abbott Manufacturing Company prior to August 2, 1912, and knew its condition to be insolvent; that it was impossible for plaintiffs to have discovered the condition of said company on said date; that they did not so discover said financial condition of said company prior to that date; that Martin represented to them that the company was in good financial condition, and, if not, that he would make the condition of the company good; that said representations were made with intent to deceive and defraud these plaintiffs; that the representations were fraudulent; that plaintiffs believed them to be true at the time, and they acted upon them as true, and thereafter they discovered said company was in bad financial condition, and they called upon the defendant to make its financial condition good, and he failed to do so. They further alleged in the trial amendment that the consideration for which said note was given had failed, and they prayed that it be canceled and held for naught, and for damages, etc.

On the 2d day of September, 1912, the defendant, Martin, filed his amended answer and plea in reconvention or cross-action, in which he pleaded a general demurrer, general denial, numerous special exceptions, and specially that the plaintiffs had investigated the financial condition of the Hardwick Abbott Manufacturing Company for themselves, and, after obtaining all of the information they desired, and with a full knowledge of the financial condition of said company, they purchased said stock, and executed said note, and that he made no false or untrue statement to them, or either of them, in regard to said matters or things. He specially pleaded that at the time of the execution of said note the plaintiff Daniel was solvent; that he is now and for some time has been hopelessly insolvent; that T. J. Dudley is now and at all times has been insolvent;

that at the time of the execution of said note the Hardwick Abbott Manufacturing Company was a going concern; that it is now and for some time past has been insolvent, and had gone into bankruptcy; that the affidavit for injunction heretofore issued in this cause was not made in good faith, and that each and all of the facts alleged in said affidavit are untrue; that since the execution of said note J. W. Daniel has conveyed all of his property, and that the injunction issued in this cause was sued out for the purpose of permitting said Daniel to dispose of his property, and that by reason thereof said note has become worthless; that the United States Fidelity & Guaranty Company was a surety upon said injunction bond—and he prayed for judgment against each of the plaintiffs and said surety upon said bond the amount of his note, with interest. He further alleged that he could and would have been able to have negotiated or sold said note to a man at Merkel, Tex., if not prevented by the writ of injunction issued in this cause; that at the time he took said note he fully informed the plaintiffs about the equity he had in a tract of land situated in Erath county, Tex.; that certain deferred payments would become due upon said land on December 1, 1911, and that said payments were secured by the vendor's lien upon said land; that he informed plaintiffs that he expected to negotiate their note in order to make his payments upon said land, and that, by reason of the injunction having been issued in this cause, he had lost his said land by reason of foreclosure proceedings having been instituted, and that he had thereby been damaged in the sum of $3,700, the value of his equity in said land. The defendant United States Fidelity & Guaranty Company answered by general demurrer, special exception, and a general denial, and adopted the pleadings of the plaintiff on the 3d day of March, 1913. A trial on the 11th day of March, 1913, resulted in a verdict in favor of the plaintiffs for $5,000 damages, that defendant, Martin, take nothing by his plea in reconvention or cross-action, and that the note for $2,000 given him by the plaintiffs and the Hardwick Abbott Manufacturing Company be canceled and held for naught. Judgment was entered in accordance with the verdict of the jury; but afterwards, upon a hearing of the defendant's motion for a new trial, the court required the plaintiffs to enter a remittitur of so much of the judgment as awarded them the $5,000 damages. The motion to set aside the judgment in all other respects was overruled, and defendant appealed.

The first assignment of error complains of the court's refusal to direct, at the request of appellant, a verdict in his favor "as to all matters set up in plaintiff's pleadings." The propositions contended for under this assignment are: (1) That "a promise to ob-

tain funds with which to conduct a business is merely a promise to perform an act in the future, and is in no sense such a promise as will sustain an action for fraud"; (2) that "a promise to continue to work for and stay with a business is a promise to perform acts in the future, and is not such a promise as will constitute actionable fraud"; (3) that the undisputed testimony in this case shows that G. C. Martin did make the financial condition of the Hardwick Abbott Manufacturing Company in as good condition on August 2, 1911, as it was in on March 18, 1911.

[1, 2] It is well settled that a false statement upon which fraud may be predicated must be of existing facts, or facts which previously existed, and cannot consist of mere promises as to future acts, even though such promises are subsequently broken. Conoway v. Newman Mill & Lumber Co., 91 Ark. 324, 121 S. W. 353; Mathews v. Eby, 149 Mo. App. 157, 129 S. W. 1016; 20 Cyc. p. 20, and cases cited. Plaintiffs' action, in so far as it sought to recover damages of defendant, and to cancel the note given him by them and the Hardwick Abbott Manufacturing Company purely upon the ground that defendant had fraudulently represented and promised that he would obtain funds with which to conduct the business of said company in the future and would continue to work for and stay with the business could not be maintained. These promises, however, may have entered into and formed a part of the consideration for the execution and delivery of the $2,000 note, and, if so, constituted a proper defense to said note under plaintiffs' plea of failure of consideration. In view of this phase of the case, the peremptory instruction was properly refused.

[3] We are of the opinion that the practically undisputed evidence shows that defendant, Martin, made good any obligation he may have assumed to put the Hardwick Abbott Manufacturing Company by August 2, 1911, in as good financial condition as it was in on March 18, 1911; but this was not sufficient to justify the giving of defendant's special charge directing the jury to return a verdict in his favor "as to all matters set up in plaintiffs' petition."

[4] The court charged the jury as follows: "Gentlemen of the jury, at the request of plaintiffs you are further instructed, in addition to the general charge given herein, that, if you believe from the evidence that at the time of the execution and delivery of said note for $2,000, that defendant, G. C. Martin, or any one with his authority, agreed and contracted with plaintiffs to extend, carry, or renew said $2,000 [note] until the other debts of the Hardwick Abbott Manufacturing Company were paid, and you find that the debts of said company were not paid, then you shall find for plaintiffs against defendant on defendant's cross-action for damages herein, and by your verdict you will cancel said

note." This charge is made the basis of appellant's fifteenth assignment, and was error and prejudicial to appellant. If, at the time the note mentioned in the charge was given, the appellant agreed to extend the time of its payment until the other debts of the Hardwick Abbott Manufacturing Company were paid, it was but a promise to do or perform certain things in the future concerning it, which furnished no legitimate defense to defendant's cross-action based upon said note. The note by its terms became due and payable on a day certain, and its legal effect could not be controlled, varied, or defeated by allegations and proof of a parol contemporaneous agreement relieving appellees, upon certain contingencies, of payment at the time specified in it. Such a promise did not constitute a part of the consideration of said note, or, if a part, not the whole consideration, and the charge was not called for or applicable to the pleadings or facts touching appellees' plea of failure of consideration.

Appellant requested the court to charge the jury that they could not find for the appellees upon their allegations that the defendant agreed he would not sell, transfer, or negotiate the $2,000 note executed and delivered by the Hardwick Abbott Manufacturing Company and appellees to appellant, and to return a verdict in favor of appellant upon that issue. This charge was refused, and the jury, on the contrary, instructed at the instance of appellees that, if the appellant, at the time said note was executed and delivered, entered into an agreement not to negotiate, transfer, or assign said note, then in no event to find for defendant on his cross-action. The refusal of the one and the giving of the other of these charges constituted material error, and, for the same or a similar reason, that the giving of the special charge made the basis of appellant's fifteenth assignment was error.

We are further of the opinion that the paragraph of the court's charge complained of in appellant's sixteenth assignment of error was upon the weight of the evidence; but that, in view of the remittitur entered by appellees, furnishes no ground for a reversal.

[5] The fifth assignment of error is that the court erred in permitting the witness E. P. West to testify, over the objection of this defendant, as to the value of the plant of the Hardwick Abbott Manufacturing Company at a date subsequent to August 2, 1911, as is more fully shown by defendant's bill of exceptions No. 10. The testimony here complained of and admitted was to the effect that a year or more after the sale of the shares of stock to appellees the entire plant, building, and material owned by the Hardwick Abbott Manufacturing Company were appraised at $3,650. This appraisement and estimate of the value of the property belonging to the Hardwick Abbott Manufacturing Company

was made at a time too remote from the date of the sale and purchase by appellees of the stock of said company held by them to furnish a criterion, or to be of any reliable aid, in determining the value of the property or assets of said company at the time of such sale and purchase, or in determining any other issue in the case. It was therefore inadmissible, and should have been excluded.

For the errors indicated, the judgment is reversed, and the cause remanded.